Per Curiam.

Admittedly, the contentions of Apex depend upon an interpretation of subdivision (c) (1) of Section 1345-4, General Code (122 Ohio Laws, 695, 705, 706), as in force on January 1, 1948, which read (this statute, now Section 4141.24, Eevised Code;, was substantially amended in 1951. See 124 Ohio Laws, 488, 498):
“If an employer shall transfer his business or shall otherwise reorganize such business, the successor in interest is hereby required to assume the resources and liabilities of such employer’s account, and to continue the payment of all contributions due under the Unemployment Compensation Act.” (Emphasis added.)
Admittedly, National continued to employ more than three employees after the sale of its Grant Avenue plant to Apex. Admittedly, it was an employer required to contribute under the Ohio unemployment compensation statutes. See Section 1345-1, General Code (Section 4141.01, Eevised Code). There 'is no definition of the word “business” as used in those statutes. However, it is apparent that, if, after the sale of its Grant Avenue plant to Apex and before the completion of its liquidation, National had transferred all its remaining assets and all its activities to a newly organized corporation, there would have been a “transfer” of its “business” by National as an “employer,” and the transferee corporation would be “the sue *372 cessor in interest” of National within the meaning of those words as used in the foregoing-quoted statute.
It is apparent therefore that, if the 1948 sale by National to Apex represented any transfer of National’s “business,” it did not represent a transfer of the “whole” hut only a transfer of a “part” of that business.
Prior to 1941, the words of the foregoing-quoted statute, which read, “transfer his business,” were followed by the words “in whole or in part” (117 Ohio Laws, 289, 294). By amendment of that statute in 1941 (119 Ohio Laws, 821, 831), the latter words were eliminated from the statute, and they were not replaced by the subsequent 1947 amendment of the statute. It appears that, by the elimination of the foregoing words “in whole or in part,” the General Assembly quite clearly expressed the intention that there should be no “successor in interest” within the meaning of the foregoing-quoted statute unless the whole of an employer’s business was transferred. Apex’s arguments to the contrary would be persuasive only in the absence of this expression of intention by the General Assembly.
It is further contended that, in making his decision, the administrator relied upon evidence which was not in the record, and that both the Common Pleas Court and the Court of Appeals likewise relied upon such evidence in support of their judgments. However, in view of our interpretation of the above-quoted statute and of the facts which are conceded by appellant and do appear in the record, we do not believe that such reliance could possibly have prejudiced Apex. Apex concedes that, after the sale of the Grant Avenue plant, National retained certain assets, was engaged in activities relative to their, liquidation and employed more than three employees in those activities. As hereinbefore pointed out, it necessarily follows that the “whole” of National’s “business” had not been transferred to Apex and that Apex was not “the successor in interest” of National within the meaning of the foregoing-quoted statute.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart, Bell and Taet, JJ., concur.